The EPA blew a statutory deadline by eight months and then demanded that Texas complete an impossible task in only three. But the EPA assured Texas that it could solve the problem by seeking voluntary reclassification quote, at any time, which the EPA again assured Texas it was required to grant. But once Texas relied on those comments, the EPA blew another statutory deadline by three months and one day after Texas sought voluntary reclassification, the EPA pulled what this court has called a surprise switcheroo and sanctioned the state. I'd like to make three points today. The first is that the EPA has violated the change in position doctrine. The second is that it's violated the good faith reliance doctrine. And the third is that the only argument that the EPA has offered in response, a lack of ripeness, has since been overtaken by events and by the EPA's own subsequent statements following the close of briefing. Beginning with the change in position doctrine, this is on page 381 of White Lion, of the court's en banc decision in White Lion. The court held that the APA demands that an agency display awareness that it is changing position and may not depart from prior policy sub silentio or disregard rules that are still on the books, but rather it must provide a detailed justification. The court also held that an agency cannot shift its understanding of the law between time one and two, downplay that shift, and escape vacator under the APA. But that's- I've got a lot more to say on that as well as the other change in position issue. Let me ask you about ripeness and how this works. Is there still a, you may say not practically, but is there still a legal possibility that a plan could be presented in time, dealing with the requirements that the EPA has imposed, and there would be no sanction? So I think the answer to that is in the June 2024 EPA reclassification order, which is a separate case that we have challenged. What that, what the EPA- That's a final decision that's a separate petition for review? That's correct. And what the June 2024 EPA reclassification order, which is the subject of a separate case says, is that the October 2023 findings, meaning the FTS sanctions order that is the issue of this case, is beyond the scope of the new rule. And additionally, what that order says is that it relieves the TCEQ of three of the seven moderate SIPP submission requirements, but it maintains that the TCEQ has to do for others. So I think the answer to Your Honor's question is that separate new case, the subject of that case will be about whether or not the TCEQ has to comply with the remaining four. The argument you just made is in your opposition to the motion to consolidate, and you said that what you just quoted or summarized from the EPA fatally undercuts the rightness argument. But it does seem to me that it's arguable that what is going on here is that there are two separate issues, one of which is, is an obligation by the EPA for either one of the two doctrines you're presenting to us to abstain with the previous commitment, maybe, to extend the deadlines if you agree to convert these to serious. They're trying to argue that that's off the table. But this Court doesn't need to accept that. It does seem to me that if that is an argument, a legitimate argument that has purpose, that it's not right potentially to make it, and I want you to respond to it, until in fact you are harmed by their, what was the modifying word, their switcheroo. I forget what the first word is. So the state will be harmed on May of 2025 by the order that is currently issued and Right, but you're only harmed then, and you don't, you will not be harmed if in fact you can meet that deadline. So again, To the rightness point. Right, and so we maintain in the new case, and I want to be careful about discussing the new case, because our brief is due November 12th, and I don't want to prejudice our ability to make new arguments in a brief that has not yet. We've said here today, I'm not sure it's going to bind you, but go ahead. Sure, but the point I want to be sure. I'm not sure it won't either. I'm not making a ruling for the Court. The point that I want to be sure to make is that by operation of law, the sanctions will take effect in May of 2025, and even if we were to win the new case. Well, no, no, they take effect if you do not comply with what the sanctions are punishing. Right, and we may, and certainly one of the things that we're going to be maintaining in the new case is that the EPA erred when it said we only are free of three of the seven requirements. I can certainly say that, I can certainly say that the TCEQ is working, but we maintain that in our new case, in what we're calling the EPA reclassification case, challenging the June 2024 order, that the EPA also erred in that case by holding us to the remaining four of the seven moderate classifications when we voluntarily reclassified ourselves from moderate to serious. The sanctions will take effect in May of 2025, and only vacatur of this order, not the new case, can change that fact, and we certainly maintain in the new case that we weren't required to do any of those, any, any, any, any of those requirements. The EPA relieved us of three of the seven, as I mentioned, and I think this Court has also correctly already denied two motions on this point. The first was prior to the new petition for review being filed, and the second was after the new petition for review being filed, because I think at that time the Court recognized that those sanctions are going to take effect at that time. What we recognize, perhaps instead, I think the order was signed by our clerk, is that, court clerk, is that we were on the cusp of having this argument, and we ought to proceed with this argument and get a firm picture of what you and opposing counsel have to say about all of this, but I wouldn't read too much into an order denying college consolidation at this point. Sure, but it may also be worth pointing out that this past Friday, this past October 4th, and the citation for this is going to be at 89 Fed Reg at 80,838. About three days ago? I'm sorry? About three days ago? Yes, I'm talking about three days ago, the EPA actually filed a brand new proposed rule that says that moderate SIP submissions of the type like this, the new default deadline should be 18 months, and not only that, but in the October 2022, the original order that said the state has three months from October to January 1st of 2023 to make the moderate SIP submissions, in that order, the EPA provided examples of times when it had given states eight months or 11 months. Their new proposed rule is saying that for SIP submissions of this type, the rule should be 18 months. Is this something you're going to make some submission to us on, this October 4th ruling? I'm sorry, I couldn't hear the Court's question. Is this something you're going to make some submission to us on? Is this a significant development on an October 4th order in this case or more generally? I don't think that's necessary for purposes of this case. I'm just pointing it out for the fact that now the EPA's current position is that a SIP submission of this type, in their view, should take about 18 months. To be clear, that's a proposed rule, but I think that's relevant along with what the EPA said in October of 2022 of saying times of eight months, times of 11 months might be the appropriate amount of time for how to handle these specific types of moderate SIP submissions. But regardless of that, I do want to also be sure to address the change in position doctrine, and this is at 87 Fed regs. Counsel, before we move on to that, I'm anxious to hear your argument on that. There's the fact that Texas voluntarily reclassified its nonattainment status to serious after the SIP deadline matter in this case. I don't think it does, and that's for three reasons. The first is that although there are deadlines that are in the Clean Air Act, there is no statutory deadline in the Clean Air Act for voluntary reclassification. But even regardless of that point, what the EPA said was a state may at any time request, and the EPA must grant a voluntary reclassification. In fact, seven times throughout the October 2022 final rule, the EPA said a version of this is the way in which the state can avoid all of the problems with such a short SIP submission deadline. And so I think the best answer to your Honor's question, excuse me, is that the Governor is a very serious and careful man. TCEQ and the Governor were led to believe that at any time an EPA must grant, combined with the lack of a statutory deadline for a voluntary reclassification, meant that they had the time to make a very serious and consequential decision. It's certainly the Governor's letter reflects that he absolutely understood that there would be consequences regardless of the decision he made. One would involve giving the TCEQ an impossible task, one, as his letter reflects, talks about how there could be significant harm to the Texas economy, and the EPA at this point, after making such a clear statement like at any time and the EPA must grant, those are certainly statements that trigger the good faith reliance doctrine. And I think this Court, when this Court in White Lion, this is page 384 of White Lion held that even when an agency lawfully changes its position, it can't fault a party for relying in good faith on the prior one, and it discusses a D.C. Circuit case called Satellite Broadcasting, which it cites for the point that even if there's two reasonable ways to read what a federal agency tells you to do, tells a regulated party what to do, as long as one of those ways is a reasonable way to read it, even if it's not the most correct, and certainly we maintain that there was only one way to read what the EPA told us in October 2022, it would still trigger a reasonable reliance interest. The language that that case uses that this Court cites is reasonably interpreted to require either result, and that's really the situation that we have here. And the other reason that I think it's important as it relates to delaying or consolidating these cases is that the EPA has forfeited arguments in this case, and it also has some Chenery problems in this case about the ability or the lack of ability to make post-talk rationalizations, and the Court should not consolidate these two cases. But what's the Chenery argument? Well, the EPA's October 2022 rule and the subsequent, the FTS sanctions rule, the October 2023 rule, were completely devoid of a reasonable explanation and were completely devoid for any legal rationale for why they changed their position. They shouldn't be able to, in a new case, make new statutory interpretation arguments that they didn't make at the time. That would be barred by Chenery. That's the problem. That, in our view, along with possible forfeiture issues in their brief in this case, they shouldn't be allowed to delay those things, to delay the case like that. And I think maybe a broader point that needs to be made is that it's not the job of states or regulated parties more broadly to second-guess what the executive, that is the enforcer, tells a state what to do and risk penalty. Certainly this Court has described the Clean Air Act as an experiment in cooperative federalism and that certainly rules and regulations surrounding the Clean Air Act can change between administrations but that experiment in cooperative federalism will not work if a state just can't take the EPA at their word or else risk a penalty. Counsel, what would a ruling in your favor, in your client's favor in this case, do to the other case? It wouldn't affect the other case because it's two different forms of relief on two different legal theories. This case, if the state were to prevail, would stop the sanctions clocks. It would vacate the failure to submit. Would it change the deadlines? I'm sorry? Would it change the deadlines? Well I think what it would mean is that the sanctions clocks would stop and then in the new case, what we're going to call the EPA reclassification case, which challenges the June 2024 order, then that case would be about is the state free of submitting the remaining four of the original seven moderate submission requirements. So this case would be stopping the sanctions. The new case would be whether or not the state needs to meet those remaining four obligations and if the state were to win in that case, it would mean that the state would not have to do so. But, yes. Let me ask you, the opposing counsel may have a better answer, better knowledge of this, but of the 11 states that were found not to be in compliance or whatever the number was, is there other litigation at all similar to what we're looking at? I can't speak to that because I only represent . . .  I think it's probably not in your ball field anyway. I'll find out if . . . Yeah. So I'm not sure what the status of that is. What the Texas case is about is three areas in Texas, Dallas, Houston, and San Antonio. What I can tell the court is that just a few days, I believe it was September 30th of 2023, the Sierra Club sued the EPA and the U.S. District Court for the District of Columbia. We cited that case in our brief saying that the EPA had not yet entered its FTS sanctions orders and it was 18 days after that when the order was published in the Federal Register and it was only . . . they actually signed the order only one day after the state sought voluntary reclassification. You had an exchange with Judge Inglehart a little while ago and you said you were about to get to something and Judge Inglehart said he wanted to hear it but something else was raised first. Did you ever get to the point you wanted to make? Yes. I think I did and I see my time has expired so we'd ask . . . Well, we can give more time. I just want to make sure that an issue concerning one of my colleagues got addressed. I think so. Thank you. Good morning, Your Honors. Paul Kaintyk from the United States Department of Justice on behalf of Respondents EPA and the EPA Administrator. I want to start with how counsel just characterized EPA's argument in this case. He said the only argument that we made was a ripeness argument. Now that's not wholly true. The argument that we started out with on the very first page of the argument section of our brief is that the statutory language commanded EPA to issue the finding of failure to submit here. I actually think that's a point on which EPA and Texas actually agree. It's 42 U.S.C. section 7410 K1b says that EPA has to make a determination within six months of a state submission deadline passing of whether the state submitted a complete plan. And if the state hadn't, then EPA is required to issue a finding of failure to submit. Is that taking a position that whatever was said before that might support the argument that you have made, a change of position, or that there are reliance interests, that that was improper? Your Honor, so we did not address the change of position and reliance . . . Yes, you did. . . . arguments in our brief. We don't believe that EPA made the promises that Texas . . . Let's say we conclude that you did. Would that be inconsistent with your arguing now, the first page of your brief? It would certainly . . . Would it add to Act by these dates? If the Court did in fact find that we had made those promises, those promises would in fact be contravened by the plain text of the Clean Air Act, which said that EPA has to issue this finding of failure to submit. And what we don't believe that Texas has provided in their change in position arguments or anywhere in their briefs or in anything that counsel just represented is a statutory provision, a case, a citation, some authority that would give EPA the right to ignore that statutory command. And using your knowledge, which also may be more focused on this case than others, has similar arguments been made about change in position arising from other states who were subjected to the same orders? I do not believe there has been any other litigation that any of the other ten states that were the subject of this finding of failure to submit ended up suing on change in position or reliance interest arguments. It's just Texas for these three particular areas that I'm aware of. Well, Texas is known for asserting its rights. Proceed. Right. A second point that I'd like to address is Texas's framing of the purported unfairness or equities in this case that they were given an impossible-to-meet deadline of three months. So even assuming that three months was their total timeframe for when they could have been planning a moderate area SIP submission, EPA didn't issue the finding of failure to submit until ten months after that three-month deadline. So in effect, Texas has had 13 months before that finding was ever issued, or before that finding was ever issued. On top of that, all that the finding does is start the sanctions clocks. The first sanction doesn't actually kick in until 18 months after that finding. So the practical effect is that Texas, from the moment that it was formally told to submit a moderate area plan to the moment that the first sanction will kick in, Texas will have had 31 months to submit a moderate area plan. And Your Honors, as I stand here today, as we are here in this courtroom today, Texas has still not submitted any moderate, or submitted a complete moderate area plan. They still have seven-and-a-half months to do so. I think that gets to your question, Judge Southwick, what could Texas feasibly submit something and pause, actually stop the sanctions clocks entirely between now and when the sanctions begin? Yes, if they just submit a complete plan submission, which completeness, in the way I use it now, is for certain minimum completeness criteria that are really kind of administrative, like a, uh, the SIP has to be accompanied by a letter from the governor or his designee that he's seeking approval. All the state has to do is submit that plan, and under EPA's regulations, those sanctions clocks can be paused. So you're saying that it doesn't matter that the EPA missed its own deadline? That Texas should have just assumed that the EPA would one day take action, uh, but it doesn't matter that the EPA deadline came and went months prior? I don't think I'm saying it does not matter. I think it's regrettable that that deadline was missed. It was missed by a four-month period. But that being said, my point is, when Texas says that the equities lie in their favor because EPA has also missed deadlines, they have only benefited from that, uh, that late issuance of the finding of failure to submit. Well, to return to the point you were making just before that, that addition, um, I'm understanding from you, which was my question to opposing counsel, that it's not preordained that May 2025, this sanction will be imposed. It depends on what Texas does by then. If they do file something that is supposed to comply with that obligation, the sanction could still arise later if EPA determines it's not in compliance with their obligation. That's right. So there's, there's kind of two separate analyses that happen when the EPA... I'm mainly looking at ripeness now, and is the issue now before us, and what are the ramifications that Texas is, is arguing that they're facing, uh, that result from the deadline that they're facing? What, what we believe is ripe is the question of whether EPA was obligated by statute to issue the finding of failure to submit. We think that's a cut and dry analysis. The analysis is just, they had a deadline, they missed it, the statutory language commands that EPA issue that finding. What we don't think is right for review is their reliance interests and their change in position argument for the reason that what's really undergirding that is Texas's legal theory that upon reclassification from moderate to serious, they no longer have to submit any of the moderate area plan elements. Now the reason why we say that's not right is because here we have a clear statutory command and Texas has not identified any statutory provision in this case or in any of the lead up in the record for this case for why EPA could ignore that statutory command. That's not a ripeness issue, is it? It sounds like it's a merits issue. Well, we think that the right, the finding of failure to submit is the right, is ripe for review and this court could decide the case on that ground alone. For the arguments about is Texas still required to submit a moderate area plan now that voluntary reclassification has actually been granted, that is the subject of these two new petitions that have now been consolidated with each other. It is the subject of several comments, not just from the state of Texas, but from other groups that submitted comments in response to EPA's proposed reclassification, grant of the reclassification request from Texas. And we believe one of the considerations for this court in making a prudential ripeness determination is whether or not there, the court would benefit from additional development of the legal issues. How can our ruling in this case affect the other petition, later petition for review? So that's a very good question, Your Honor, because . . . Well, thank you. You didn't say that to any of my other . . . Right. Well, there's been a lot of discussion about the case wages and white lines investments versus FDA that this court heard on Bonk. One of the doctrines that this court recognized in that case was the harmless error doctrine, right, which is a very narrow exception, but is an exception that says if the agency would be required to reach the same substantive result, regardless of whatever justification it provides, remand, vacater, is not appropriate. Here we have a situation where Texas, to date, has still not submitted a moderate area plan. EPA can reach no other determination than Texas has failed to submit a plan by its submission deadline. And so we don't actually think that there's any value in granting Texas any of the purported relief that they claim. If we were to rule in favor of Texas in this case, error that that would be in your mind, how does that affect the other case? If we are assuming error in this case and EPA has to reissue the finding of failure to submit. So while maybe I just gave it away, EPA would still have to reissue that finding of failure to submit because the SIPP submission deadline has passed. EPA has nothing before it currently. If EPA had to reissue it, I see. Basically, I think what Texas is arguing, and he can correct me when he's not Texas, I guess, but counsel for Texas can say when he gets up here, is that he gets the deadlines that they were promised by the EPA, which are not May 2025 and whatever the other date is. So if that's, if we make that hold, error though it would be in your mind, what does that do to the other case? Right. So that would push, that would, EPA would be required to reissue the finding of failure to submit, which we could say the effective date of that is XYZ date when they do it. And then the sanctions clocks run from that time. Now, we don't think that the harmless error doctrine justifies that approach, but how would it affect, it's more of how would this case be affected by the subsequent action that's being challenged in the new petitions. So Texas, before that voluntary reclassification was granted, had to submit a moderate area plan. Now that the reclassification has been granted, EPA's position is that certain elements that are tied to the moderate area attainment date no longer have to be submitted. So that's things like an attainment demonstration, which is a demonstration that by the attainment date, the plan will actually come together and actually meet the air quality standard. Well, if the attainment date has been pushed, then EPA's position is, well, that'd be a totally hypothetical exercise because we'd be saying, we'd be asking Texas to say, how would a hypothetical plan have hypothetically met the air quality standard in August of 2021 or August of 2024? Now that means that the voluntary reclassification has been granted, Texas still has to submit moderate area plan elements that are not tied to that attainment date. And that's pursuant, again, to our view, the plain text of the Clean Air Act, that's 7511A.C.  One question that Judge Englehart asked was, is there any relevance to the fact that Texas submitted the SIP submission or submitted the voluntary reclassification request after the SIP submission deadline had already passed? Now, I think sort of anecdotally, it says that perhaps Texas was not reasonably relying on that if they had believed that the SIP submission deadline could be pushed by voluntary reclassification. It's a bit questionable why they did not submit that before the SIP submission deadline had actually passed. Now, that said, we think what the really operative and important fact is, is that voluntary reclassification had not been granted at the time that EPA issued the finding of failure to submit. So that reclassification... But EPA controlled that, right? Whether or not they were going to grant it, as I understood your opponent, they didn't have the discretion to not grant it, correct? That's correct. The statute says expressly that EPA shall grant that request. So it would not be presumptuous of them to think, okay, we now have the benefit of the reclassification. But what the statute is playing, though, so this is 42 U.S.C. section 7511B, and what the statute is playing about is the voluntary reclassification request does not have legal effect up until certain required procedural steps have been taken, and the reclassification has actually been granted by EPA. So it says that EPA, before issuing that voluntary reclassification request, shall issue a notice in the Federal Register of that request, and then later on actually publish something in the Federal Register of their action granting that request. Is it inviting comments? Is that why you're publishing the notice? I'm sorry. It's still automatic, isn't it? Publishing notice sounds as if you're inviting comments. But whatever comments might come in, the statute says it has to be granted. Yeah. So, Your Honor, the reason why there has to be a notice beforehand is because reclassification comes with both automatic nondiscretionary consequences, so namely the pushing of the attainment deadline, that's set by statute, but it also comes with certain discretionary elements, including the actual setting of the SIPP submission deadline. So what EPA was soliciting comment on was what should these regions of Texas's new SIPP submission deadlines be for the new serious area classification. That's left to EPA's discretion under Section 7511AI of the statute. And that's what EPA was soliciting comment on. There's a lot of scientific considerations. Well, it still seems to me the benefit that Texas was entitled to by this filing for reclassification voluntary was not a benefit, I don't see where it would be legally dependent on any of the other steps that you're talking about, that they were entitled to it by the simple submission. And I don't know if you have some case law that says this sort of last-minute filing with these other steps still to be taken somehow eliminates this entitlement and I haven't heard it, I haven't seen it. So it seems we might be making some new law that this gap period sinks Texas's case. Your Honor, I am not familiar with any case that has dealt with this particular issue. I'm actually not familiar with any case where a party has challenged a finding of failure. Some reasonable reliance on close to the deadline filing seems reasonable enough. Yeah. To be redundant. Right. I mean, I think that our other argument, again, not in the briefs, is that EPA never would have made the promise that Texas says that we're making. There are discrete benefits to pushing out the attainment deadline for a voluntary reclassification that are not associated with any benefits from a SIP submission. So for example, one of those is contingency measures. So those are measures which automatically activate upon a state failing to attain by the attainment deadline, right? And those can be quite onerous at times. They can involve something like a, for the pollutant particulate matter. That can involve a scenario where there are street sweepers that have to pick up some fugitive dust from dirt roads while you have a hundred. If you fail to attain by the attainment deadline, then you have to increase your fleet to 150. So those contingency measures can be quite onerous. If you push out the attainment deadline, then you can actually delay having those contingency measures actually kick into place. That's the kind of benefit that a state gets from reclassification. We think that the statute is clear in 7511A, that the act of reclassification itself is an additive one. It's one where you are required to both have the elements from the previous classification as well as instituting new elements, and that makes sense because we're talking about areas that either their air quality has gotten worse or it has taken them far longer than anticipated for them to actually attain the air quality standard. And so we don't believe, Your Honor, that the plain text of the statute would support a view that the SIPP submission deadline itself would be passed, would be extended upon reclassification. Your Honor, that's all the points that I have. If the court has no further questions, then I respectfully ask that the court deny Texas's petition for review. You may be back, huh? Both sides. Thank you. I want to begin with what my friend on the other side talked about as the plain text of the statute. The EPA made this case not about that. They made this case about what they promised to Texas when they said you may voluntarily reclassify at any time and the EPA must grant it. This is exactly what this court in White Lion said that a federal agency can't do, is say you may reclassify at any time to changing their interpretation of the statute and saying actually the statute all along says that you weren't allowed to do it. That's exactly what they just— What if we conclude that that argument, though, is right, that the statute does not allow them to do it? Where are we? I'm sorry, I couldn't— If we interpret the statute in the way the advocate on the other side just said and conclude they did not have the authority to extend these deadlines through this means, where does that leave us? I don't think that would change the outcome of the case and that's because even if what the EPA just said is correct about that, that's only one of several necessary conditions and this is Encino Motor Cars, for that order to be given the effect of law. The other is that they have to comply with a different statute, the arbitrary and capricious standard of the APA. And what this court has said is that if they don't follow both that statute and the APA, then that order can't be given the effect of law. And we certainly—I certainly would note that my friend on the other side didn't say that phrases like at any time and EPA must grant were ambiguous. Rather, it seemed like the implication of my friend on the other side's argument was that states had an affirmative obligation to second guess what the executive told them to do and check behind what their statements were. If that's really true, then the Clean Air Act is not going to function. States have to be able to take the EPA at their word for what their obligations are under the Clean Air Act. No doubt states can sue if they disagree, but what they're doing is exactly what White has done, which is change their interpretation of the law between time 1 and time 2. They have to comply with that, but they also have to comply with the EPA. I also want to be sure to address a point about how the states somehow benefited from missed deadlines. The EPA's deadline for reclassifying us to moderate was February of 2022. In October of 2022, their own rule recognized that what they were asking the state to do was, quote, challenging. They used the word challenging repeatedly in that rule and said, but nonetheless, we understand we blew our deadline by eight months, but January 1st of 2023 is when you have to complete this task. That is not the state benefiting from the EPA's missed statutory deadline. I also want to be sure to address the ripeness argument. The EPA's ripeness argument was this case isn't ripe until the new rule comes out in June of 2024. That was the argument they made. The June of 2024 rule, of course, has already come out. That was the ripeness argument that they made at the time. That's been overtaken by events and by their own subsequent statements in that rule. The harmless error point is forfeited. They never made a harmless error argument in their brief. To the extent they're making a harmless error argument for the first time, an oral argument, that's been forfeited at this point. The last point that I want to be sure to make as it relates to when the governor sent his letter, as I mentioned previously, the governor sent his letter and then one day after that was when the EPA issued the FTS sanctions order. The letter is in the administrative record. This is Judge Higginbotham's opinion that we cited in our brief. The administrative record comprises everything that the EPA either considered or at least should have considered. To the extent that my friend on the other side makes the argument that, oh, this happened one day later, and I think my recollection of what he said is, well, at that point, we hadn't actually granted the voluntary reclassification. It was in the administrative record in the case. By operation of law, we can presume that they considered the request for voluntary reclassification. And if the court has no further questions, we ask that the court vacate the FTS sanctions order. All right, counsel. Thanks to both of you for assisting us on this.